# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| STEPHEN J. VASH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:21-cv-3384-SCJ |
| T-MOBILE US, INC., | ) ) ) | |
| Defendant. | ) | |

**T-MOBILE US, INC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ....................................................................................2

    A.     Plaintiff's Agreement to Arbitrate.................................................2

    B.     Plaintiff's 2021 Agreements to Arbitrate ......................................4

III.   ARGUMENTS AND AUTHORITIES ..................................................8

    A.     The FAA Applies and Requires Enforcement of
           Plaintiff's Arbitration Agreements .................................................8

    B.     Plaintiff Agreed to Arbitrate His Claims Against T-
           Mobile...........................................................................................12

    C.     Plaintiff's Claims Fall within the Scope of His
           Arbitration Agreements. ...............................................................15

    D.     Plaintiff's Arbitration Agreements are Valid and
           Enforceable Under Georgia Law....................................................18

           1.     Plaintiff's Arbitration Agreements Are Neither
                  Procedurally Unconscionable Nor Substantively
                  Unconscionable. ................................................................20

           2.     Plaintiff's Arbitration Agreements Are Not
                  Procedurally Unconscionable.............................................21

            3.     Plaintiff's Arbitration Agreements Are Not
                  Substantively Unconscionable. ..........................................22

    E.     Under the FAA, the Court Must Stay This Action
           Pending Arbitration . ....................................................................23

IV.    CONCLUSION....................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ........................................................................... 9

*Am. S. Ins. Co. v. Pxre Reinsurance Co.*,
   No. 1:04-cv-3572-WSD, 2005 U.S. Dist. LEXIS 58998 (N.D. Ga. June
   13, 2005) ........................................................................................... 16

*Arnsdorff v. Papermill Plaza*,
   LLC, 756 S.E.2d 668 (Ga. Ct. App. 2014) ........................................ 18

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .............................................................. 10, 11, 17

*Atl. Aviation, Inc. v. EBM Grp.*,
   11 F.3d 1276 (5th Cir. 1994) ............................................................... 9

*Batiste v. Atlanta Gas Co.*,
   No. 1:15-CV-4144-ELR-JSA, 2016 U.S. Dist. LEXIS 90524 (N.D. Ga.
   June 13, 2016) ................................................................................... 13

*Bazemore v. Jefferson Cap. Sys., LLC*,
   827 F.3d 1325 (11th Cir. 2016) ......................................................... 12

*Bruce v. PharmaCentra, LLC*,
   No. 1:07-CV-3053-TWT, 2008 U.S. Dist. LEXIS 116742 (N.D. Ga. Apr.
   1, 2008) ............................................................................................. 14

*Caley v. Gulfstream Aero. Corp.*,
   428 F.3d 1359 (11th Cir. 2005) ......................................................... 22

*Campbell v. Verizon Wireless, LLC*,
   No. 14-0517-WS-N, 2015 U.S. Dist. LEXIS 10707 (S.D. Ala. Jan. 29,
   2015) ................................................................................................. 16

ii

*Choe v. T-Mobile USA, Inc.*,
   No. SA CV 18-0648-DOC, 2018 U.S. Dist. LEXIS 236096 (C.D. Cal.
   Aug. 1, 2018) ..................................................................................17

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)..........................................................................11

*Comvest, L.L.C. v. Corp. Sec. Grp.*,
   507 S.E.2d 21 (Ga. Ct. App. 1998)..................................................15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................12

*Extremity Healthcare, Inc. v. Access to Care Am., LLC*,
   793 S.E.2d 529 (Ga. Ct. App. 2016)...........................................13, 15

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)..........................................................................18

*Goldberg v. Sweet*,
   488 U.S. 252 (1989)..........................................................................10

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)............................................................................11

*Hall v. Fruehauf Corp.*,
   346 S.E.2d 582 (Ga. Ct. App. 1986)................................................23

*Hensley v. S.G.T., Inc.*,
   No. 1:15-CV-00077-RWS, 2015 U.S. Dist. LEXIS 102248 (N.D. Ga.
   Aug. 5, 2015) ..............................................................................19, 20

*Honig v. Comcast of Ga. I, LLC*,
   537 F. Supp. 2d 1277 (N.D. Ga. 2008).............................................15

*Hopkins v. World Acceptance Corp.*,
   798 F. Supp. 2d 1339 (N.D. Ga. 2011)........................................20, 21

*Innovative Images, LLC v. Summerville*,
   848 S.E.2d 75 (Ga. 2020) .................................................................19

*Kong v. Allied Pro. Ins. Co.*,
   750 F.3d 1295 (11th Cir. 2014) ............................................................9

*Krut v. Whitecap Hous. Grp., LLC*,
   602 S.E.2d 201 (Ga. Ct. App. 2004)...................................................18

*Med S. Health Plans, LLC v. Life of the S. Ins. Co.*,
   No. 4:07-CV-134 (CDL), 2008 U.S. Dist. LEXIS 40223 (M.D. Ga. May
   19, 2008) ..............................................................................................18

*Mohammad v. T-Mobile USA, Inc.*,
   No. 2:18-cv-00405-KJM-DB, 2018 U.S. Dist. LEXIS 202678 (E.D. Cal.
   Nov. 28, 2018) .....................................................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).........................................................................11, 17

*Nec Techs., Inc. v. Nelson*,
   478 S.E.2d 769 (Ga. 1996) ............................................................21, 23

*Palmer v. Convergys Corp.*,
   No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200 (M.D. Ga. Feb. 9,
   2012) .....................................................................................................22

*Preston v. Ferrer*,
   552 U.S. 346 (2008)....................................................................10, 12

*Slaughter v. Amsher Collection Serv. and T-Mobile*,
   No. 1:16-CV-1768-ELR-WEJ, 2016 U.S. Dist. LEXIS 196178 (N.D. Ga.
   Oct. 11, 2016) ......................................................................................20

*Webb v. Doordash, Inc.*,
   451 F. Supp. 3d 1360 (N.D. Ga. 2020)................................................24

*W. G.A. Wireless, LLC v. W. G.A. Wireless*,
   No. 3:16-cv-196-TCB, 2017 U.S. Dist. LEXIS 231520 (N.D. Ga. Mar.
   13, 2017) ..............................................................................................23

*WM Mobile Bay Envt. Ctr., Inc. v. City of Mobile*,
   No. 20-14749, 2021 U.S. App. LEXIS 29457 (11th Cir. Sep. 29, 2021)............9

**STATUTES**

9 U.S.C. § 2 .................................................................................................8, 11

9 U.S.C. § 3 ...........................................................................................1, 11, 23

9 U.S.C. § 4 .......................................................................................................1

Pursuant to 9 U.S.C. §§ 3 and 4 (the Federal Arbitration Act or "FAA"), Defendant T-Mobile US, Inc. ("T-Mobile") hereby respectfully moves this Court to enter an Order compelling arbitration of Plaintiff Stephen J. Vash's ("Plaintiff") claims and staying all proceedings pending Plaintiff's arbitration.

## I.    INTRODUCTION

Plaintiff's agreements with T-Mobile requires him to arbitrate the claims he attempts to assert in this litigation.  As set forth more fully below, T-Mobile's Motion to Compel Arbitration should be granted because:

- Plaintiff agreed to arbitrate his disputes with T-Mobile on multiple occasions.  The scope of Plaintiff's arbitration agreements is broad, encompassing all disputes with T-Mobile "in any way related to or concerning" Plaintiff's agreements with T-Mobile, devices or services provided by T-Mobile, or T-Mobile's Privacy Policy.  *See* Declaration of Christopher Muzio filed concurrently herewith ("Muzio Decl.") ¶¶ 20, 24, Ex. B at 3-4, Ex. D at 3.

- All of Plaintiff's claims in this litigation fall squarely within the scope of his arbitration agreements.  Specifically, all of Plaintiff's claims hinge on T-Mobile's alleged failure to implement reasonable measures to protect personal data that T-Mobile acquired and maintained in connection with

Plaintiff's agreements with T-Mobile and the devices or services provided by T-Mobile thereunder. Thus, these claims fall squarely within the scope of Plaintiff's agreements to arbitrate.

- Plaintiff's arbitration agreements are fully enforceable and not unconscionable under Georgia law. There is no basis for any finding of procedural or substantive unconscionability – and Plaintiff would have the burden of proving both to escape his arbitration obligations – as the arbitration agreements are fair, even-handed, easily understood, and do not contain any surprises with respect to arbitration.

This Court should not relieve Plaintiff of the contractual obligation to arbitrate that he willingly undertook. Instead, under the FAA, this Court's role is to enforce the parties' arbitration agreements and move this dispute into arbitration as quickly as possible. T-Mobile's Motion to Compel Arbitration should therefore be granted.

## II.   **BACKGROUND**

### A.   **Plaintiff's Agreement to Arbitrate**

On August 26, 2004, Plaintiff opened an account with T-Mobile and activated a line of service. Muzio Decl. ¶ 4. At this time (and continuing today), T-Mobile's regular practice and procedure was to require customers to agree to

T-Mobile's Terms and Conditions when they activate a line of service. *Id.* ¶ 5. On August 26, 2004, T-Mobile's October 2003 Terms and Conditions (the "2003 Terms and Conditions") were in effect. *Id.* ¶ 6, Ex. A. The 2003 Terms and Conditions inform Plaintiff in the very first paragraph: "BY ACTIVATING OR USING OUR SERVICE YOU AGREE TO BE BOUND BY THIS AGREEMENT. Please carefully read these Terms and Conditions ("T&C's") as they describe your Service and affect your legal rights. IF YOU DON'T AGREE TO THESE T&C'S DO NOT USE THE SERVICE OR YOUR UNIT." Muzio Decl. ¶ 7, Ex. A at 1 (emphasis in original). With respect to acceptance, the 2003 Terms and Conditions provide in relevant part:

> This is your agreement with T-Mobile USA, Inc and its affiliates (together "T-Mobile," "we" or "us") for: (a) communication and related services ("Service"), (b) the purchase or use of smart cards or radio or any other equipment purchased or obtained from us, including replacement equipment, for use with the Service ("Unit") and (c) for other purchases or services (provided by us or third parties) billed to your account ("Other Services"). The Agreement begins when: (1) you sign or electronically accept the Agreement, (2) you activate or use the Service, or (3) are deemed to accept the Agreement (see Sec. 2), whichever happens first.

Muzio Decl. ¶ 8, Ex. A at ¶ 1 (emphasis in original). Plaintiff activated and used his service. Muzio Decl. ¶ 9. By doing so, he accepted the 2011 Terms and Conditions. *Id.*

With respect to arbitration, the 2003 Terms and Conditions provide in relevant part:

> Mandatory Arbitration; Dispute Resolution.   YOU WILL FIRST NEGOTIATE WITH US IN GOOD FAITH TO SETTLE ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR OUR PROVISION TO YOU OF GOODS, SERVICES OR UNITS ("CLAIM").   YOU MUST SENT A WRITTEN DESCRIPTION OF YOUR CLAIM TO OUR REGISTERED AGENT (See Sec. 22).   IF YOU DO NOT REACH AGREEMENT WITH US WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, YOU AGREE THAT ANY CLAIM MUST BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER ITS PUBLISHED WIRELESS INDUSTRY ARBITRATION RULES, WHICH ARE A PART OF THE AGREEMENT BY THIS REFERENCE AND ARE AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT www.adr.org.   You must serve our registered agent (See Sec. 22) with a notice of an arbitration in order to begin an arbitration.   This agreement to arbitrate extends to claims that you assert against other parties, including without limit equipment manufacturers and dealers, if you also assert claims against us in the same proceeding.   The Agreement involves interstate commerce and despite the choice of law provision in Sec. 25, the Federal Arbitration Act and federal arbitration law govern arbitrations under the Agreement. . . .

*Id.* ¶ 10, Ex. A at ¶ 3 (emphasis in original).   The 2003 Terms and Conditions also include a class action waiver and a jury trial waiver.   Muzio Decl. ¶ 11, Ex. A at ¶ 3.

### B.   Plaintiff's 2021 Agreements to Arbitrate

Plaintiff again agreed to arbitrate his disputes when he purchased a cellular

device from T-Mobile on May 12, 2021. *Id.* ¶ 22. Plaintiff entered into an Equipment Installment Plan, where he agreed to purchase his cellular device under a payment installment contract. Muzio Decl. ¶ 23. Plaintiff signed an Equipment Installment Plan Contract ("2021 EIP") via DocuSign that includes another agreement by Plaintiff to arbitrate disputes with T-Mobile. *Id.*, Ex. D. The 2021 EIP contains an arbitration clause that states in part:

> **\* Dispute Resolution and Arbitration**. […] This section describes how any disputes between you and T-Mobile will be resolved. WE AND YOU EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT. This includes any claims against others relating to services or equipment provided or billed to you (such as our suppliers, dealers or vendors) when you also assert claims against us in the same proceeding. This agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply (despite the choice of law provision below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MAY AWARD ON AN INDIVIDUAL BASIS THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

Muzio Decl. ¶ 24, Ex. D at 3 (emphasis in original). The 2021 EIP also contains class action and jury trial waivers. Muzio Decl. ¶ 25, Ex. D at 3.

In connection with this purchase, Plaintiff signed a receipt (the "2021 Receipt"). *Id.* ¶ 26, Ex. E. The 2021 Receipt is a two-page document that

explicitly informs Plaintiff that by activating or using T-Mobile's services, or by purchasing a T-Mobile device, he was accepting T-Mobile's Terms and Conditions:  "If you activate or use T-Mobile service, or purchase a T-Mobile device, you agree to T-Mobile's Terms and Conditions and any terms specific to your rate plan."  Muzio Decl. ¶ 27, Ex. E at 1.  The 2021 Receipt also includes the following information about Plaintiff's obligation to arbitrate:

> **Disputes.**  T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS.  For details see T-Mobile's Terms and Conditions at www.T-Mobile.com/terms-conditions.

Muzio Decl. ¶ 28, Ex. E at 1 (emphasis in original).  As reflected above, the arbitration provision found on the 2021 Receipt that Plaintiff signed directs him to the website where the Terms and Conditions could be found.  Muzio Decl. ¶ 29, Ex. E at 1.  On May 12, 2021, T-Mobile's March 1, 2021 Terms and Conditions (the "2021 Terms and Conditions") were in effect and available on the website described above.  Muzio Decl. ¶ 30.  The 2021 Terms and Conditions notify subscribers of the arbitration agreement at the outset in the first unnumbered paragraph, which states: "Please read these Terms & Conditions ("T&Cs"), which contain important information about your relationship with T-Mobile, including mandatory arbitration of disputes between us, instead of class actions or jury trials.

You will become bound by these provisions once you accept these T&Cs."  Muzio

Decl. ¶ 18, Ex. B at 1.

The 2021 Terms and Conditions include a mandatory arbitration provision

under the large bolded header "**HOW DO I RESOLVE DISPUTES WITH**

**T-MOBILE**":

> By accepting these T&Cs, you are agreeing to resolve any dispute
> with us through binding arbitration or small claims dispute procedures
> (unless you opt out), and to waive your rights to a jury trial and to
> participate in any class action suit. . . . .
> * * * *
> **Dispute Resolution and Arbitration.**  **YOU AND WE EACH
> AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND
> ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR
> CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE,
> OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING
> ANY BILLING DISPUTES, WILL BE RESOLVED BY
> BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**
> This includes any claims against other parties relating to Services or
> Devices provided or billed to you (such as our suppliers, dealers,
> authorized retailers, or third party vendors) whenever you also assert
> claims against us in the same proceeding.  You and we ach also agree
> that the Agreement affects interstate commerce so that the Federal
> Arbitration Act and federal arbitration law, not state law, apply and
> govern the enforceability of this dispute resolution provision (despite
> the general choice of law provision set forth below).  THERE IS NO
> JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF
> AN ARBITRATION AWARD IS LIMITED.  THE ARBITRATOR
> MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE
> SAME DAMAGES AND RELIEF AS A COURT (INCLUDING
> ATTORNEYS' FEES).

Muzio Decl. ¶ 19, Ex. B at 3-4.  Additionally, the 2021 Terms and Conditions

contain a class action waiver and a jury trial waiver.  Muzio Decl. ¶ 20, Ex. B at 6.

The 2021 Terms and Conditions also have a governing law provision that states in

pertinent part:

> This Agreement is governed by the Federal Arbitration Act,
> applicable federal law, and the laws of the state or jurisdiction in
> which your billing address in our records is located, without regard to
> the conflicts of laws rules of that state or jurisdiction.  Foreign laws do
> not apply.  Arbitration or court proceedings must be in the county and
> state or jurisdiction in which your billing address in our records is
> located, but not outside the U.S.; or Puerto Rico.

Muzio Decl. ¶ 21, Ex. B at 29.

As of today, Plaintiff remains a T-Mobile subscriber.  Muzio Decl. ¶ 33.  He

continues to make monthly payments for his T-Mobile service.  *Id.*  Plaintiff's

billing address in T-Mobile's records is in Norcross, Georgia.  Muzio Decl. ¶ 34,

Ex. F at 6.

## III.   ARGUMENTS AND AUTHORITIES

### A.   The FAA Applies and Requires Enforcement of Plaintiff's Arbitration Agreements

The FAA preempts state law and requires enforcement of arbitration

agreements by providing that agreements to arbitrate "shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has expansively

construed the phrase "involving commerce" as extending the FAA's reach to the

full limit of Congress' Commerce Clause power.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).  There is no question that the FAA applies to Plaintiff's arbitration agreements.  Indeed, the parties expressly agreed that "the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below)." *See* Muzio Decl. ¶¶ 19, 24.

Moreover, the FAA applies because the contracts between T-Mobile and Plaintiff are contracts between citizens of different states.  *See, e.g.*, *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (finding arbitration provision governed by FAA because Allied is an Arizona corporation and insured was a Florida citizen); *Atl. Aviation, Inc. v. EBM Grp.*, 11 F.3d 1276, 1280 (5th Cir. 1994) ("This Court has held that a contract may involve commerce under the FAA if the parties engaged in the performance of contract activities are citizens of different states, where such a contract involves interstate travel of both personnel and payments.").  T-Mobile is a Delaware Corporation with its principal place of business in Washington.  Muzio Decl. ¶ 2.  Thus, T-Mobile's citizenship is Delaware and Washington.  *See WM Mobile Bay Envt. Ctr., Inc. v. City of Mobile,* No. 20-14749, 2021 U.S. App. LEXIS 29457, at *4 (11th Cir. Sept. 29, 2021)

(noting that a corporation is a citizen of (1) the state under whose laws it is incorporated; and (2) the state of its principal place of business). Plaintiff alleges that he lives in Georgia, making him a citizen of a different state than T-Mobile. *See* Compl. ¶ 11; *see also* Muzio Decl. Ex. F at 6 (Plaintiff's billing address is in Georgia).

Finally, the FAA applies because Plaintiff's agreements with T-Mobile relate to the provision of wireless service to Plaintiff across state lines, further making clear that the agreements affect interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (noting telecommunications industry constitutes interstate commerce).

"The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA both "embod[ies]" and declares "a national policy favoring arbitration[.]" *Id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA "as reflecting both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract[.]'" *Concepcion*, 563 U.S. at 339 (internal citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing

with other contracts . . . and enforce them according to their terms[.]" *Id.* (internal citations omitted).  As the Supreme Court has stated:

> This purpose is readily apparent from the FAA's text.  Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written . . . ; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement . . . .

*Id.* at 344 (citations omitted).

Time after time, the United States Supreme Court has recognized this strong public policy in favor of arbitration.  *See id.* at 345–46 (noting that "the FAA was designed to promote arbitration[,]" and that the FAA embodies a "national policy favoring arbitration"); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (noting the pro-arbitration purposes of the FAA); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (enforcing agreement to arbitrate and holding that Congress intended the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts" (quotation omitted)).

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)

("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").  Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate[.]"  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Bazemore v. Jefferson Cap. Sys., LLC,* 827 F.3d 1325, 1329 (11th Cir. 2016) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (internal citation omitted)). The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Preston*, 552 U.S. at 357.

Therefore, the FAA applies here and requires enforcement of Plaintiff's arbitration agreements.

### B.    Plaintiff Agreed to Arbitrate His Claims Against T-Mobile.

Plaintiff agreed to arbitrate the claims asserted in this lawsuit and to waive any ability to participate in a class action, including by signing the 2021 EIP (Muzio Decl. ¶ 23, Ex. D) and the 2021 Receipt (Muzio Decl. ¶ 26, Ex. E) and by continuing to use and pay for T-Mobile service after being prominently notified

that doing so would constitute acceptance of the Terms and Conditions and their arbitration clauses and class action waivers (*Id.* at ¶¶ 7-9, 16-17, 27).[1]

Indeed, as recently as May 2021, Plaintiff agreed at least twice to arbitrate his disputes and waive his ability to participate in a class action—by signing the 2021 EIP that includes an arbitration provision and by signing the 2021 Receipt that incorporates the 2021 Terms and Conditions and includes an arbitration provision. *See* Muzio Decl. ¶¶ 23, 26. For purposes of efficiency and simplicity, this Motion will focus on Plaintiff's most recent May 2021 arbitration agreements—although the result would be the same under any of his earlier agreements.

On May 12, 2021, Plaintiff signed the 2021 EIP, which contains an arbitration clause and a class action waiver. Muzio Decl. ¶¶ 23-25. Under Georgia law, a party's signature is sufficient to show its agreement to a contract. *Extremity Healthcare, Inc. v. Access to Care Am., LLC*, 793 S.E.2d 529, 535 (Ga. Ct. App. 2016). As such, Georgia courts consistently enforce arbitration agreements where a party signed the agreement. *See Batiste v. Atlanta Gas Co.*, No. 1:15-CV-4144-

---

[1] This includes Plaintiff's acceptance of the 2021 Terms and Conditions after the March 2021 rollout of these Terms and Conditions. Muzio Decl. ¶¶ 12-17, Ex. C.

ELR-JSA, 2016 U.S. Dist. LEXIS 90524, at *24 (N.D. Ga. June 13, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 90786 (N.D. Ga. July 6, 2016) (finding that the plaintiff agreed to arbitrate by signing the arbitration agreement); *Bruce v. PharmaCentra, LLC*, No. 1:07-CV-3053-TWT, 2008 U.S. Dist. LEXIS 116742, at *14 (N.D. Ga. Apr. 1, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 34509 (N.D. Ga. Apr. 24, 2008) ("By signing and initialing the agreement, Plaintiff Johanna Bruce clearly indicated her assent to its terms," including an arbitration provision).  Therefore, Plaintiff clearly agreed to arbitrate his disputes with T-Mobile and waived his ability to participate in class actions when he signed the 2021 EIP.

Additionally, Plaintiff signed the 2021 Receipt in connection with a purchase he made with T-Mobile.  Muzio Decl. ¶ 26.  The 2021 Receipt explicitly informed Plaintiff that by activating or using T-Mobile's services or by purchasing a T-Mobile device, he was agreeing to T-Mobile's Terms and Conditions.  *Id.* ¶ 27. The 2021 Receipt also states that "T-Mobile REQUIRES ARBITRATION OF DISPUTES" and directs Plaintiff to the website containing T-Mobile's Terms and Conditions for more details.  *Id.* ¶ 28-29, Ex. E at 1.  Plaintiff signed the 2021 Receipt and continues to use and pay for T-Mobile's services and devices.  Muzio Decl. ¶¶ 26, 33.  By doing so, Plaintiff accepted T-Mobile's Terms and Conditions,

14

which require arbitration and contain a class action waiver.   *See Extremity Healthcare, Inc.*, 793 S.E.2d at 535 (finding that the parties agreed to the contract's terms by signing the agreement); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1281, 1284 (N.D. Ga. 2008) (finding that the plaintiff agreed to arbitrate when she paid for and used Comcast's services after Comcast's service agreement notified that she "will have accepted this Agreement and be bound by i[t]s terms" if she "use[d] Services");   *Comvest, L.L.C. v. Corp. Sec. Grp.*, 507 S.E.2d 21, 24-25 (Ga. Ct. App. 1998) ("Parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract,  or the acceptance by one of the performance by the other.").

**C.     Plaintiff's Claims Fall within the Scope of His Arbitration Agreements.**

There can be no question that Plaintiff's claims fall within the scope of his arbitration agreements.  The 2021 EIP's arbitration provision provides:

> ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, EQUIPMENT, DEVICES OR PRODUCTS

Muzio Decl. ¶ 24, Ex. D at 3.  In a nearly identical provision, the 2021 Terms and Conditions provide that:

15

**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

Muzio Decl. ¶ 19, Ex. B at 3-4. It is well established that arbitration provisions that use the terms "any and all claims" and "related to" are broad in scope and create a strong presumption of arbitrability. *See Am. S. Ins. Co. v. Pxre Reinsurance Co.*, No. 1:04-cv-3572-WSD, 2005 U.S. Dist. LEXIS 58998, at *4 (N.D. Ga. June 13, 2005) (finding the scope of a provision requiring arbitration of "any and all disputes relating to this Agreement" to be broad and mandating arbitration); *Campbell v. Verizon Wireless, LLC*, No. 14-0517-WS-N, 2015 U.S. Dist. LEXIS 10707, at *27 (S.D. Ala. Jan. 29, 2015) (finding that the arbitration agreements' "broad language covering 'any controversy or claim' or 'any dispute' necessarily calls for arbitration of all species of claims").

Here, Plaintiff's claims fall squarely within the scope of his arbitration agreements.[2] Specifically, all of Plaintiff's claims hinge on T-Mobile's alleged failure to implement reasonable measures to protect Plaintiff's sensitive personal information that T-Mobile acquired and maintained in connection with Plaintiff's

---

[2] Plaintiff's claims also fall within the scope of his 2004 and March 2021 arbitration agreements, which provides additional bases for compelling arbitration of his claims.

agreements with T-Mobile and the devices or services provided by T-Mobile thereunder. Compl. ¶¶ 60, 80, 97, 105. These claims relate to and concern Plaintiff's agreements with T-Mobile as well as the service and devices provided thereunder. The privacy-based claims Plaintiff asserts also relate to or concern T-Mobile's Privacy Notice. *See Choe v. T-Mobile USA, Inc.*, No. SA CV 18-0648-DOC (KESx), 2018 U.S. Dist. LEXIS 236096, at *14-15 (C.D. Cal. Aug. 1, 2018) (finding that "T-Mobile's Privacy Policy and the arbitration clause's coverage of all claims related to the policy demonstrate T-Mobile's intent to arbitrate claims stemming from the misuse of personal data"); *Mohammad v. T-Mobile USA, Inc.*, No. 2:18-cv-00405-KJM-DB, 2018 U.S. Dist. LEXIS 202678, at *20-21 (E.D. Cal. Nov. 28, 2018) (holding that the plaintiff's data breach claims concerned T-Mobile's services and thus fell within the scope of a similar T-Mobile arbitration clause containing the same operative language).

Because Plaintiff's claims fall squarely within the scope of his arbitration obligations, his claims must be arbitrated. *See Concepcion,* 563 U.S. at 344; *see also Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

**D.      Plaintiff's Arbitration Agreements are Valid and Enforceable Under Georgia Law.**

Although the FAA and the strong federal policy in favor of arbitration apply to Plaintiff's arbitration agreement, Georgia law applies to determine whether Plaintiff's arbitration agreements are enforceable.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts "should apply ordinary state-law principles that govern the formation of contracts" in determining enforceability of an arbitration agreement); *see also* Muzio Decl. ¶ 21, Ex. B at 29 (agreement is governed by the law in which Plaintiff's billing address is located); Muzio Decl. ¶ 34, Ex. F at 6 (Plaintiff's billing address is in Georgia); Compl. ¶ 11 (identifying Plaintiff as a resident of Georgia).

Under Georgia law, "it is the cardinal rule of contract construction that the court should ascertain the intent of the parties."  *Arnsdorff v. Papermill Plaza*, LLC, 756 S.E.2d 668, 669 (Ga. Ct. App. 2014).  "[T]he starting point in contract construction is 'to look to the four corners of the instrument to determine the intention of the parties from the language employed.'"  *Med S. Health Plans, LLC v. Life of the S. Ins. Co.*, No. 4:07-CV-134 (CDL), 2008 U.S. Dist. LEXIS 40223, at *10 (M.D. Ga. May 19, 2008); *see also Krut v. Whitecap Hous. Grp., LLC*, 602 S.E.2d 201, 207 (Ga. Ct. App. 2004) (enforcing arbitration clause where contract demonstrated parties' intent to arbitrate).  In this case, Plaintiff's intent to arbitrate

could not be plainer.  The arbitration agreements expressly provide that "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT**."  *See* Muzio Decl. ¶ 19, Ex. B at 3-4 (emphasis in original); *see also* Muzio Decl. ¶ 24, Ex. D at 3 (materially same language).

If Plaintiff seeks to avoid his arbitration obligation, including on the basis of unconscionability, he bears burden of proof.  *See Innovative Images, LLC v. Summerville,* 848 S.E.2d 75, 83 (Ga. 2020).  Here, the arbitration agreements are not unconscionable and therefore fully enforceable.[3]

"Georgia law sets a high bar for the finding of unconscionability."  *Hensley v. S.G.T., Inc.*, No. 1:15-CV-00077-RWS, 2015 U.S. Dist. LEXIS 102248, at *11 (N.D. Ga. Aug. 5, 2015).  After the Supreme Court's ruling in *Concepcion*, Georgia courts have consistently enforced consumer arbitration agreements, including T-Mobile's arbitration agreement, and rejected arguments of

---

[3] As noted above, it is Plaintiff's burden, not T-Mobile's burden, to prove the arbitration agreement is unenforceable.  *Innovative Images, LLC,* 848 S.E.2d at 83. By highlighting the enforceability of Plaintiff's arbitration agreement here, T-Mobile is not in any way assuming the burden of proof with respect to that issue.

unconscionability.  *See, e.g.*, *Slaughter v. Amsher Collection Serv. and T-Mobile*, No. 1:16-CV-1768-ELR-WEJ, 2016 U.S. Dist. LEXIS 196178, at *12 (N.D. Ga. Oct. 11, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 196167, at *2 (N.D. Ga. Nov. 30, 2016) (finding T-Mobile's arbitration provision in its Terms and Conditions was enforceable and not unconscionable); *Hopkins v. World Acceptance Corp.*, 798 F. Supp. 2d 1339, 1346-50 (N.D. Ga. 2011) (finding arbitration contract in loan agreement enforceable and not unconscionable).  The same result should follow here.

      1.    <u>Plaintiff's Arbitration Agreements Are Neither Procedurally Unconscionable Nor Substantively Unconscionable.</u>

Unconscionability has procedural and substantive elements.  "For a contract to be found unconscionable under Georgia law, there generally must be both procedural and substantive unconscionability."  *Hensley v. S.G.T., Inc.*, No. 1:15-CV-00077-RWS, 2015 U.S. Dist. LEXIS 102248, at *10 (N.D. Ga. Aug. 5, 2015).  Plaintiff cannot show that the arbitration agreements are either procedurally or

substantively unconscionable—much less both—and therefore the arbitration agreements must be enforced.[4]

2.     Plaintiff's Arbitration Agreements Are Not Procedurally Unconscionable.

In general, a procedural unconscionability inquiry focuses on "process of making the contract," and Georgia courts consider various factors, including "the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Nec Techs. Inc. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996). Nevertheless, "a contract is not necessarily unconscionable when one party is economically disadvantaged or lacks sophistication." *Hopkins*, 798 F. Supp. 2d at 1346.   "Moreover, a contract of adhesion requiring arbitration is not per se unconscionable or unenforceable, and the concerns attending to contracts of adhesion can be addressed by highlighting important terms." *Id*.  As such, courts have found that terms that are clear and in bold print weigh against a finding of

---

[4] The same analysis applies with respect to Plaintiff's 2012 arbitration agreement and March 2021 arbitration agreement, which are neither procedurally nor substantively unconscionable.

procedurally unconscionability. *Palmer v. Convergys Corp.*, No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200, at *14 (M.D. Ga. Feb. 9, 2012).

That is precisely the manner in which T-Mobile repeatedly and prominently informed Plaintiff of his arbitration obligation. T-Mobile disclosed the arbitration agreements in bold and capital letters in the 2021 Terms and Conditions, the 2021 EIP, and the 2021 Receipt, Muzio Decl. ¶¶ 19, 24, 28, Ex. B at 3-4, Ex. D at 3, Ex. E at 1.[5] T-Mobile also used clear and understandable language in its arbitration agreement and capitalized, bolded, or underlined especially important parts of the arbitration agreement and even explaining that the arbitration agreement meant that claims could not be resolved in court or in a class action. *Id.* Thus, the arbitration agreements are not procedurally unconscionable.

### 3. Plaintiff's Arbitration Agreements Are Not Substantively Unconscionable.

Plaintiff's arbitration agreements are also not substantively unconscionable. "Under Georgia law, an unconscionable contract is 'such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of.'" *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1378 (11th Cir.

---

[5] The same is true of the arbitration provision in Plaintiff's 2004 arbitration agreement. Muzio Decl. ¶ 10, Ex. A at ¶ 3.

2005) (quoting *Hall v. Fruehauf Corp.*, 346 S.E.2d 582, 583 (Ga. Ct. App. 1986)). Courts consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Nec Techs. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996). Notably, "[u]nconscionable agreements must shock the conscious." *W. G.A. Wireless, LLC v. W. G.A. Wireless*, No. 3:16-cv-196-TCB, 2017 U.S. Dist. LEXIS 231520, at *9 (N.D. Ga. Mar. 13, 2017). Far from shocking the conscience, the arbitration agreements here are even-handed and fair.

Under the agreements, arbitration is to be conducted by the AAA pursuant to its rules, including consumer-friendly procedures specifically designed for consumer disputes. Muzio Decl. Ex. D at 3, Ex. E. at 5. Moreover, the agreements do not require Plaintiff to pay any fees associated with the arbitration. *Id.* Thus, the agreements are more than generous to Plaintiff and clearly not unconscionable.

### E.   Under the FAA, the Court Must Stay This Action Pending Arbitration .

Because Plaintiff is bound to arbitrate his disputes, the FAA requires a stay of this action pending arbitration.[6]  9 U.S.C. § 3 ("If any suit or proceeding be

---

[6] The stay should apply to all further proceedings and activities in this action, including discovery.

brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved . . . is referable to arbitration . . . *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had . . . .*") (emphasis added).   Thus, when, as here, a plaintiff asserts claims within the scope of an enforceable arbitration agreement, the Court must stay the action pending arbitration. *See Webb v. Doordash, Inc*., 451 F. Supp. 3d 1360, 1370 (N.D. Ga. 2020) (staying case pending the outcome of arbitration after granting motion to compel arbitration).   Because Plaintiff must arbitrate the claims asserted here, Section 3 requires that this case be stayed until the arbitration is concluded.

## IV.    <u>CONCLUSION</u>

Plaintiff is contractually required to arbitrate, rather than litigate in court, his individual claims against T-Mobile.   T-Mobile's Motion to Compel Arbitration should thus be granted, and the action should be stayed.

Dated: October 15, 2021

Respectfully submitted,
*/s/ Kristine McAlister Brown*
Kristine McAlister Brown
Georgia Bar No. 480189
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000

24

E-Mail: kristy.brown@alston.com

*Attorney for Defendant T-Mobile US, Inc.*

## **LOCAL RULE 7.1D CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1B.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of October, 2021, the foregoing was electronically filed with the Clerk of the Court by using the Court's electronic filing system, which will send notification to all counsel of record who are registered participants of the Court's electronic filing system.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown